[L. A. No. 25465. In Bank. Nov. 3, 1959.]

JACK OWENS, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JESSIE THIELE, Real Party in Interest.

Parker, Stanbury, Reese & McGee and White McGee, Jr., for Petitioner.

Harold W. Kennedy, County Counsel, and Edward A. Nugent, Deputy County Counsel, for Respondent.

Charles F. Legeman for Real Party in Interest.

TRAYNOR, J.—In January, 1957, plaintiff (real party in interest herein) commenced an action against defendant (petitioner herein) to recover damages for injuries suffered from being bitten by defendant's dog. The cause of action arose in California when defendant was a resident here, but before the action was commenced, defendant became a permanent resident of Arizona. In September, 1958, plaintiff secured an order for publication of summons pursuant to Code of Civil Procedure, section 412, and defendant was personally served with summons in Arizona on September 29th. (See Code Civ. Proc., § 413.) Defendant appeared specially and moved to quash the service of summons on the ground that it was ineffective to give the trial court jurisdiction over him. The court denied his motion, and he then filed this petition for a writ of prohibition to prevent further proceedings against him.

■ Since Code of Civil Procedure, sections 416.1-416.3, were enacted in 1955, the appropriate remedy, when a trial court refuses to quash service of summons on the ground of lack of jurisdiction over the defendant, is a writ of mandate directing the court to enter its order quashing service. (*Hartford* v. *Superior Court*, 47 Cal.2d 447, 451 [304 P.2d 1]; *Chesin* v. *Superior Court*, 142 Cal.App.2d 360, 362 [298 P.2d 593]; see 1 Witkin, California Procedure, Jurisdiction, § 81A.) If the facts justify such relief it is immaterial that defendant has prayed for the wrong remedy, and we treat his petition as one for a writ of mandate. (See *Boren* v. *State Personnel Board*, 37 Cal.2d 634, 638 [234 P.2d 981]; 3 Witkin, California Procedure, pp. 2568-2569.)

Section 417 of the Code of Civil Procedure provides:

"Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service."

■ Since defendant was a resident of Arizona at the time the action was commenced and at the time of service, jurisdiction under section 417 must be based on his residence here at the time the cause of action arose. (Subd. (b).) ■ As used in section 417, resident means domiciliary (*Smith* v. *Smith*, 45 Cal.2d 235, 240 [288 P.2d 497]), and it is not disputed that defendant was a California domiciliary at the time the cause of action arose. Defendant contends, however, that this fact is not sufficient to permit the state to acquire jurisdiction over him by personal service beyond its borders, and that, in any event, subdivision (b) is inapplicable in this case because it was enacted not only after the cause of action arose and after defendant changed his domicile to Arizona, but after the action was commenced.

■ In *Allen* v. *Superior Court*, 41 Cal.2d 306 [259 P.2d 905], we considered the effect of section 417 as it was originally enacted in 1951. We pointed out that as "long provided by California law, a person who 'resides out of the state; or has departed from the state; or cannot, after due diligence, be found within the state; or conceals himself to avoid the service of summons' is subject to service by publication (Code Civ.

Proc., § 412). Under such circumstances, personal service outside the state is declared to be 'equivalent to publication' (*Ibid*, § 413). This statutory language is literally broad enough in its terms to authorize a personal judgment based on the extraterritorial service of process, either through 'publication' or 'personal service' on a defendant without the state. (See 37 Cal. L. Rev. 80, 84.)'' (41 Cal.2d at 309-310.) We then reviewed *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565], setting forth constitutional limitations on such jurisdiction and the subsequent cases, including *Milliken* v. *Meyer*, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357], and *International Shoe Co.* v. *Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], redefining such limitations. It was against this background that the Legislature enacted section 417, and we concluded that as ''so based on the broad authority of sections 412 and 413, section 417 is manifestly designed to restrict the power of the court if a personal judgment is to be entered. Thus its operation is made dependent on defendant's residence within the state either at the time of commencement of the action or time of service, and on his personal service with summons.'' (41 Cal.2d at 312.) We held that personal jurisdiction could constitutionally be based on the defendant's domicile here at the time of the commencement of the action, stating:

''One main objection to service by publication on a person residing outside of the state is that due process requires fair notice. This was a consideration in *Milliken* v. *Meyer, supra*, 311 U.S. 457, upholding a personal judgment against a domiciliary based on the personal service of process while absent from the state. It was there said at page 464: 'One . . . incident of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him.' The same principle on analogous reasoning applies where a domiciliary at the time of the commencement of the action thereafter changes his state of residence and is personally served with process in the latter state. As a citizen of the state wherein the action was commenced, he had certain responsibilities arising out of his relationship to that state by reason of domicile, one of which was amenability to suit therein. Such relationship and responsibility based on citizenship within the state are not terminated by his subsequent removal to another state, and

he may be served with process pursuant to a method reasonably designed to give him notice of the proceedings brought against him in the courts of the state of his original domicile prior to his departure therefrom. We therefore conclude that section 417 satisfies the requirements of procedural due process, for no more certain provision for defendant's receipt of actual notice of the institution of litigation against him could be made than through the specified personal service of process. (*Milliken* v. *Meyer, supra,* 311 U.S. 457, 463; see 40 Cal. L. Rev. 156.)'' (41 Cal.2d at 312-313.)

■ Defendant contends that since amenability to suit is a responsibility growing out of domicile in the state, it ceases when such domicile ceases. In the Allen case we held, however, that it did not cease if the action was commenced before the defendant changed his domicile to another state. The responsibilities arising out of domicile and its existence at the time the action was commenced were held sufficient to secure jurisdiction by service outside the state although the defendant had changed his domicile before service was made. Such jurisdiction is justified by the plaintiff's interest in being able to conduct his litigation on the basis of the facts existing at the time he must act. He must file his action where jurisdiction over the defendant may be obtained. We agree with defendant, however, that the mere fact of past domicile in the state would not subject him to its jurisdiction indefinitely, for a past domicile having no relationship to the litigation at hand would not afford a reasonable basis for an assertion of jurisdiction.

■ Subdivision (b) of section 417 requires more than past domicile in the state. There must have been domicile here at the time the cause of action arose. Since jurisdiction so based rests neither on an existing relationship nor on the right of the plaintiff to rely on an existing relationship at the time he commences his action, it may be debatable whether such jurisdiction can constitutionally be assumed in the absence of some other relevant contacts with the state. If, for example, neither the plaintiff nor the defendant were presently domiciled here and the cause of action arose out of the defendant's activities elsewhere, the fact standing alone that the defendant was domiciled here at the time the cause of action arose might be too tenuous a basis for asserting jurisdiction over him.

■ The Legislature, anticipating such doubtful cases, provided: ''If the amendment of Section 417 of the Code of Civil

Procedure, enacted at the 1957 General Session of the Legislature, or any provision thereof, or the application thereof, to any person or circumstance is held invalid, such invalidity shall not affect the provisions of said Section 417 as they were in force immediately prior to the effective date of said amendment nor shall it affect other provisions or applications of said amendment which can be given effect without the invalid provision or application, and, to this end, and in each such respect, said amendment and its provisions are declared to be severable." (Stats. 1957, ch. 1674, § 2.) Accordingly, even if domicile alone at the time the cause of action arose does not justify personal jurisdiction pursuant to sections 412 and 413, other contacts with the state either alone or together with such domicile may fully support such jurisdiction. In such a case, the severability clause compels the court to give effect to subdivision (b) of section 417 by exercising jurisdiction pursuant to its terms.

In the present case the cause of action arose out of defendant's activities in this state, namely, his ownership and possession of the offending dog. This fact alone is sufficient under the due process clause to permit the courts of this state to assert personal jurisdiction over him.

In *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], the court stated: "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff*, 95 U.S. 714, 733 [24 L.Ed. 565]. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 860-861 [323 P.2d 437], we reviewed the application of the minimum contacts test and pointed out: "In some circumstances there is adequate basis for jurisdiction when the defendant has elected to deal with the plaintiff even though only by mail. (*McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [78 S.Ct. 199, 201, 2 L.Ed.2d 223]; *Parmalee* v.

*Iowa State Traveling Men's Assn.*, 206 F.2d 518, 522.) Again, there is jurisdiction when the cause of action arose out of the breach of a contract made and to be performed in the state (*Compania De Astral, S.A.* v. *Boston Metals Co.*, 205 Md. 237 [107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646], cert. den., 348 U.S. 943 [75 S.Ct. 365, 99 L.Ed. 738]; see also *S. Howes Co.* v. *W. P. Milling Co.*, (Okla) 277 P.2d 655, 657-658) or even out of a mere isolated act in the state by the defendant or his agent. (*Nelson* v. *Miller*, 11 Ill.2d 378 [143 N.E.2d 673]; *Smyth* v. *Twin State Improvement Corp.*, 116 Vt. 569 [80 A.2d 664, 25 A.L.R.2d 1193]; *Hess* v. *Pawloski*, 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091]; *Johns* v. *Bay State Abrasive Products Co.*, 89 F. Supp. 654.)'' ▆ The rationale of the International Shoe case is not limited to foreign corporations, and both its language and the cases sustaining jurisdiction over nonresident motorists make clear that the minimum contacts test for jurisdiction applies to individuals as well as foreign corporations. ▆ It is now settled that jurisdiction over nonresident motorists does not rest on consent but on their activity in the state. (*Olberding* v. *Illinois Central R. Co.*, 346 U.S. 338, 341 [74 S.Ct. 83, 98 L.Ed. 39]; see also *Doherty & Co.* v. *Goodman*, 294 U.S. 623, 628 [55 S.Ct. 553, 79 L.Ed. 1097]; *Allen* v. *Superior Court*, 41 Cal.2d 306, 311-312 [259 P.2d 905].)

▆ Defendant contends, however, that the nonresident motorists cases stand on a special footing in that a special rule is justified by the hazards of motor vehicle operations and the likelihood that nonresident motorists will have left the state following accidents before service of process can be had. It may be conceded that the problem of securing jurisdiction over persons who have left the state where their activities gave rise to causes of action is most acute in the case of the nonresident motorist. Assumption of jurisdiction is constitutionally justified, however, not because the problem is acute and arises often, but because it is reasonable and fair to require a defendant whose voluntary acts have given rise to a cause of action in a state to litigate his responsibility for that conduct at the place where it occurred. ▆ "The social problem resulting from automobile accidents . . . may be of greater magnitude than those resulting from other tortious conduct generally; but the determination that the degree of need is such as to call for remedy is to be made by the legislature and not by the courts. The rational basis of the decisions

832

upholding the nonresident motorist statutes is broad enough to include the case in which the nonresident defendant causes injury without the intervention of any particular instrumentality. The legislature may direct its policy to the fact of injury as well as its probability." (*Nelson* v. *Miller*, 11 Ill.2d 378, 389 [143 N.E.2d 673].) ▇ It is true that our Legislature has not specifically provided for jurisdiction over nonresidents based on the "commission of a tortious act within this State" out of which a cause of action arose, as has the Illinois Legislature in the statute construed in the Nelson case. (11 Ill.2d at 381.) It has provided, however, that our courts shall have personal jurisdiction pursuant to sections 412 and 413 of the Code of Civil Procedure to the extent constitutionally permissible if the conditions of section 417 are met. The conditions of section 417 have been met in this case, and the fact that the cause of action arose out of defendant's activities here fully justifies the assumption of jurisdiction over him by personal service outside the state.

▇ Even if we were to assume that an activity carried on within the state out of which the cause of action arose must be of some peculiarly dangerous or serious kind to justify an assertion of jurisdiction, no such limitation exists if the defendant was also domiciled in the state at the time the cause of action arose. ▇ When, as in this case, the cause of action arose here out of an activity carried on here at a time when defendant was domiciled here, "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure" (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057]) fully justifies subjecting defendant to the jurisdiction of our courts. (*Henry R. Jahn & Son* v. *Superior Court*, 49 Cal.2d 855, 862 [323 P.2d 437]; *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court*, 51 Cal.2d 72, 79 [330 P.2d 789].)

*Hanson* v. *Denckla*, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283], and *May* v. *Anderson*, 345 U.S. 528 [73 S.Ct. 840, 97 L.Ed. 1221], are not to the contrary. In *Hanson* v. *Denckla* the court did not depart from the minimum contact test but pointed out that the defendant had done no act in the state that would justify an assumption of jurisdiction over it. (357 U.S. at 251.) In *May* v. *Anderson* the court did not consider whether personal jurisdiction could be based on past contacts with the state, for it was apparently conceded that the child custody decree in question was entered without personal juris-

diction over the mother and there was no statute authorizing service outside the state in such proceedings.

There is no merit in defendant's contention that subdivision (b) is inapplicable on the ground that it was enacted after the action was filed and he had established his domicile in Arizona. Plaintiff does not rely on that subdivision to validate a service attempted before it became effective, but to permit an assumption of jurisdiction permitted by the statute at the time service was made. (See Code Civ. Proc., § 416.) The statute governs procedure only, for it neither creates a new cause of action nor deprives defendant of any defense on the merits, and defendant has no vested right to have the jurisdiction of the courts of this state limited as it was at the time he left the state. Accordingly, subdivision (b) permits entry of a personal judgment pursuant to service made after its effective date. (*Ex parte Collett*, 337 U.S. 55, 71 [69 S.Ct. 944, 93 L.Ed. 1207]; *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541, 544 [69 S.Ct. 1221, 93 L.Ed. 1528]; *Norton* v. *City of Pomona*, 5 Cal.2d 54, 65-66 [53 P.2d 952]; *San Bernardino County* v. *Industrial Acc. Com.*, 217 Cal. 618, 628-630 [20 P.2d 673]; *McClurg* v. *McClurg*, 212 Cal. 15, 18 [297 P. 27]; *Rice* v. *Dunlap*, 205 Cal. 133, 137 [270 P. 196]; *Olivas* v. *Weiner*, 127 Cal.App.2d 597, 600-601 [274 P.2d 476]; *California Emp. etc. Com.* v. *Smileage Co.*, 68 Cal.App.2d 249, 252 [156 P.2d 454]; see *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388, 393-395 [182 P.2d 159]; *Allen* v. *Superior Court*, 41 Cal.2d 306, 313 [259 P.2d 905].)

The alternative writ is discharged and the peremptory writ denied.

Gibson, C. J., Spence, J., Peters, J., and Peek, J. pro tem.,* concurred.

McCOMB, J.—I dissent. I would issue the peremptory writ of mandate directing respondent court to vacate its order denying petitioner's motion to quash service of summons and to enter its order granting the motion, for the reasons stated by Mr. Justice Nourse in the opinion prepared by him for the District Court of Appeal in *Owens* v. *Superior Court* (Cal. App.), 338 P.2d 465.

Schauer, J., concurred.

---

*Assigned by Chairman of Judicial Council.