Carmen R. MITCHIM, Petitioner,

v.

Charles F. MITCHIM, Respondent.

No. B–4701.

Supreme Court of Texas.

Jan. 8, 1975.

Phillips & Norris, Gerard P. Nugent, Austin, for petitioner.

Logan, Lear, Massey & Gossett, Greg Gossett, San Angelo, for respondent.

WALKER, Justice.

The broad question in this case is whether, on the present record, the provisions of an Arizona divorce decree awarding alimony, attorney's fees and costs against a nonresident defendant served with process in another state, are entitled to full faith and credit in the courts of Texas. The trial court concluded that the Arizona court did not have personal jurisdiction over the defendant. It rendered judgment accordingly, and the Court of Civil Appeals affirmed with one justice dissenting. 509 S. W.2d 720. We reverse the judgments of the courts below and remand the cause to the district court for a new trial.

Petitioner Carmen R. Mitchim and respondent Charles F. Mitchim were married in 1949 and lived at various places during respondent's approximately 28 years of service as an officer in the United States Army. Upon his retirement in 1961, respondent began the study of optometry. In 1966 he and his wife moved to Chandler, Arizona, where he commenced his practice. Marital difficulties either developed or were intensified, and petitioner filed suits for divorce in 1969 and again in 1970. These suits were subsequently dismissed. Respondent was not satisfied with his practice, and he made several trips, sometimes accompanied by his wife, seeking a suitable area for relocation. The parties traveled together to Ozona, Texas, in the fall of 1970, and in January of the following year respondent moved there alone and set up practice. Petitioner made a surprise visit to Ozona in April, 1971, but returned to Arizona after a few days and again filed suit for divorce on June 28, 1971.

The 1971 suit was filed in the Superior Court of Maricopa County, Arizona, and process was served on respondent personally in Texas pursuant to the provisions of Rule 4(e)(2), Ariz.R.Civ.P., 16 A.R.S. Respondent filed no answer and made no appearance in the case, and judgment was rendered on March 7, 1972, granting petitioner a divorce, awarding her alimony of $950.00 per month, court costs and attorney's fees, and dividing certain property between the parties. On November 6, 1972, judgment was rendered in the same cause in petitioner's favor and against re-

spondent for $5,125.00 arrearage in alimony payments. These are the two judgments involved in the present case.

Respondent filed this suit in the 119th District Court of Tom Green County, Texas, seeking a judgment declaring that the Arizona court had no jurisdiction to render a personal judgment against him and that the divorce decree, in so far as it awarded a judgment against him for alimony, court costs and attorney's fees, is void. He does not question the granting of the divorce, since the Arizona court did have jurisdiction to dissolve the marriage relationship where petitioner was domiciled in that state. Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279; Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577. Petitioner answered with a general denial and a cross-action praying that full faith and credit be given to the Arizona decree and that the Texas court grant judgment for the amounts there awarded her plus the $5,125.00 arrearage in alimony. She prayed in the alternative for recovery of an interest in respondent's retirement benefits.

The Texas district court rendered judgment: (1) declaring that the Arizona judgment is void and unenforceable in so far as the award of alimony, attorney's fees and costs is concerned; and (2) awarding petitioner judgment for $4,207.00, determined to be one-half of the community funds in respondent's possession at the time of the divorce, and for ³⁄₁₄ths of respondent's retirement income when and as it accrues and is paid. As previously indicated, the Court of Civil Appeals affirmed with one justice dissenting.

■ Respondent contends, and the Court of Civil Appeals held, that petitioner had the burden of proving all the facts necessary to show that the Arizona court acquired personal jurisdiction over respondent. That is not correct. As pointed out in Garman v. Reynolds, Tex.Civ.App., 284 S.W.2d 262 (wr. ref.):

The California [foreign] judgment appears to be a valid, final and subsisting judgment rendered by a court of general jurisdiction. Its introduction made a prima facie case for appellant unless it was successfully attacked or the lack of jurisdiction of the court was shown. Ryan v. City Nat. Bank & Trust Co. of Oklahoma City, Okl., Tex.Civ.App., 186 S.W.2d 747; Gard v. Gard, Tex.Civ. App., 244 S.W.2d 884; Liddell v. Blevins, Tex.Civ.App., 244 S.W.2d 335. We think the burden was on appellees to establish that the judgment was not final and subsisting or that the court did not have jurisdiction to render it. Cook v. Thornhill, 13 Tex. 293; Houston v. Dunn, 13 Tex. 476; Wallace v. Schneider, Tex.Civ.App., 185 S.W. 333; Mendlovitz v. Samuels Shoe Co., Tex.Civ. App., 5 S.W.2d 559; 50 C.J.S., Judgments, § 884, sub. a, p. 463; Heidingsfelder v. Rodgers, Tex.Civ.App., 96 S. W.2d 147.

See also Country Clubs, Inc. v. Ward, Tex.Civ.App., 461 S.W.2d 651 (wr. ref. n. r. e.); Hamilton v. Newbury, Tex.Civ. App., 412 S.W.2d 801 (wr. ref. n. r. e.); Roberts v. Hodges, Tex.Civ.App., 401 S. W.2d 332 (wr. ref. n. r. e.).

The case thus turns on whether respondent has established that the Arizona court did not have personal jurisdiction over him. Rule 4(e)(2), Ariz.R.Civ.P., provides in relevant part as follows:

When the defendant is a . . . person . . . [who] has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state.

■ According to the Supreme Court of Arizona, this rule is intended to give residents of that state the maximum privileges permitted by the Constitution of the United States. To determine whether the

rule permits the acquisition of personal jurisdiction in a particular case, it is necessary to "discover the limits of personal jurisdiction constitutionally allowed, then decide whether the case before us falls within those limits." Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732. We are bound by this construction. See O'Brien v. Lanpar Co., Tex., 399 S. W.2d 340. It was necessary, therefore, for respondent to establish either: (1) that application of the rule to the present case would violate the due process clause of the United States Constitution, or (2) that the nature or facts of the case do not meet the requirements of the rule.

■ In personam jurisdiction may constitutionally be acquired by extraterritorial service of process on natural persons as in the case of corporations. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Calagaz v. Calhoon, 5th Cir., 309 F.2d 248; Owens v. Superior Court of Los Angeles Co., 52 Cal.2d 822, 345 P.2d 921; Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679. Respondent argues that this is not true with respect to cases involving marital relationships. He insists that May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221, stands for the proposition that the so-called minimum contacts doctrine has no application in the field of domestic relations. That was one of the arguments advanced by the dissenting justices in Mizner v. Mizner, supra.

The decision in *May* provides no support for respondent's position. It was held there that a Wisconsin divorce decree awarding custody of minor children to their father was not entitled to full faith and credit in Ohio since the Wisconsin court did not have personal jurisdiction over the mother. The lack of personal jurisdiction over the mother was due, however, to the absence of statutory authority. The Wisconsin statute authorizing extraterritorial service of process did not purport to confer personal jurisdiction over the party thus served.

In recent years a number of states have adopted long-arm statutes with specific language making them applicable to cases growing out of domestic difficulties. These statutes are given their intended effect. See Scott v. Hall, 203 Kan. 331, 454 P.2d 449; Dillon v. Dillon, 46 Wis.2d 659, 176 N.W.2d 362. In other states long-arm statutes containing only general language have been held to confer personal jurisdiction over nonresident defendants in divorce actions. See Soule v. Soule, 193 Cal.App.2d 443, 14 Cal.Rptr. 417; Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679; Hines v. Clendenning, Okl., 465 P.2d 460; Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656. See also 51 Neb.L.Rev. 159; 20 Hastings L.J. 361. The Arizona Court of Appeals has held that their Rule 4(e)(2) enables the court to acquire personal jurisdiction in a paternity suit. Backora v. Balkin, 14 Ariz.App. 569, 485 P.2d 292. Other decisions indicate that the courts of Arizona make no distinction between domestic relations cases and other types of suits. See Garlitz v. Rozar, 18 Ariz.App. 94, 500 P.2d 354; Rodriguez v. Rodriguez, 8 Ariz.App. 5, 442 P.2d 169.

■ The Supreme Court of the United States has not held that a long-arm statute is constitutionally incapable of conferring personal jurisdiction in cases involving child custody or alimony. We agree with the Supreme Court of Nevada, which reasoned in *Mizner* as follows:

. . . Still, it seems to us that the minimum contacts concept of in personam jurisdiction is peculiarly suited to matrimonial support cases. If such contacts are in fact present in the particular case before the court, then the extension of in personam jurisdiction beyond the borders of the forum state may prove to be a sensible step in solving some of the hardships arising from family separation. Courts must know by this

time that strict application of the Pennoyer rule to family support cases has encouraged migratory divorce by offering a shield to a spouse wishing to avoid financial responsibility. The state of the matrimonial domicile has a deep interest in its citizens and a legitimate purpose in taking steps to preclude their impoverishment. Accordingly, it is our opinion that in personam jurisdiction may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy "traditional notions of fair play and substantial justice."

■ Respondent argues that the award of alimony is not entitled to full faith and credit even though the Arizona court did acquire personal jurisdiction. We recognize that judgments for future payments of alimony and judgments otherwise subject to modification have "no constitutional claim to a more conclusive or final effect" in another state than they have in the state where rendered. New York v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133; 24 Am.Jur.2d, Divorce and Separation, § 979. That is not a problem here, however, with respect to the delinquent alimony payments that were reduced to judgment in Arizona. The separate judgment for accrued and unpaid alimony is in a sum certain determined to be due and owing by respondent, and it is entitled to full faith and credit if the court had personal jurisdiction over him.

■ Turning now to the question of whether respondent has shown that the Arizona court did not acquire personal jurisdiction, he says that his contacts with that state are so insignificant that the assertion of jurisdiction over his person is a violation of due process. We do not agree. There are no precise standards that can be applied in resolving the question, but certain general rules were stated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95:

Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

\* \* \* \* \* \*

. . . Whether due process is satisfied must depend rather upon the quality or nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. . . .

In this instance Arizona was the marital domicile of the parties from 1966 until respondent moved to Texas early in 1971. They owned their home in Arizona and continued to own it when the divorce was granted. After moving to Ozona, respondent made mortgage payments on the Arizona home and sent money to petitioner in Arizona. Petitioner is still domiciled there, and Arizona had a strong interest in providing for her support both at the time of the divorce and later. The parties may have lived together as husband and wife in Texas for no more than three days during petitioner's visit to Ozona in 1971, but that fact is hotly disputed. The suit for di-

vorce was filed less than six months after respondent left Arizona. In view of his prior residence there, he might have suf-' fered less inconvenience and expense in defending the suit in Arizona than petitioner would have in prosecuting her suit in Texas. If the requirements of Rule 4(e)(2) are met, moreover, respondent caused an event to occur in Arizona out of which the suit for divorce and claim for alimony arose. This suggests that relevant evidence may have been more readily available to an Arizona court than to one in Texas. When all the circumstances are considered, it is our opinion that, on the present record at least, the case falls within the limits of personal jurisdiction constitutionally allowed.

■ The Arizona rule by its terms extends to a person who has caused an event to occur in the state out of which the claim arose. Respondent tried the case on the assumption that petitioner had the burden of establishing that the Arizona court acquired personal jurisdiction over him. Findings of fact were requested and filed, but there is no finding and no evidence as to whether respondent did or did not cause an event to occur in Arizona out of which the suit for divorce and claim for alimony arose. We do not even know the grounds for the divorce. It is clear then that the trial court erred in concluding on the present record that the Arizona judgment for alimony, court costs and attorney's fees is void for want of personal jurisdiction over respondent. Since evidence is doubtless available to establish whether the personal judgments against respondent are valid, we do not render judgment here in petitioner's favor but remand the cause to the district court for a new trial in the interest of justice. Respondent does not complain of the holding of the Court of Civil Appeals concerning the rights of the parties in his pension, and petitioner attacks that holding only by an alternative point of error.

The judgments of the courts below are reversed, and the cause is remanded to the district court.